UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
SALVADOR DE JESUS REYES, MILWAR : 
VARGAS, and ELOY CALDAS, on behalf of :
themselves and all others similarly situated, :          **21 Civ. 7218**
                                        :
                      Plaintiffs,       :
                                        :          **COLLECTIVE AND CLASS**
            -against-                   :          **ACTION COMPLAINT**
                                        :
BENCHMARK CONTRACTING INC., ALAN :
RAFTERY, and ANDREW COLLINS,            :          **JURY TRIAL DEMANDED**
                                        :
                      Defendants.       :
-------------------------------------------------------------- X

Plaintiffs Salvador de Jesus Reyes, Milwar Vargas, and Eloy Caldas (together,

"Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys

Pechman Law Group PLLC, complaining of defendants Benchmark Contracting Inc.

("Benchmark"), Alan Raftery, and Andrew Collins (collectively, "Defendants"), allege:

## NATURE OF THE ACTION

1.      Plaintiffs were employed as carpenters and concrete workers for

Defendants, often working up to sixty-six hours per workweek. Defendants paid

Plaintiffs on a "straight time" basis, meaning at the same hourly wage rates for all hours

worked, including those over forty per workweek, thereby violating the overtime wage

payment requirements of the New York Labor Law, Articles 6 and 19 ("NYLL"), and the

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").  Defendants also failed to

furnish Plaintiffs with a wage notice at the time of hiring and with weekly wage

statements accurately reflecting their hours worked and overtime wage rates.

2.      Plaintiffs bring this action on behalf of themselves and all similarly situated

construction workers who worked on Defendants' construction worksites within the last

six years to recover unpaid overtime wages, liquidated damages, statutory damages, pre-

and post-judgment interest, and attorneys' fees and costs under the FLSA, the NYLL, and the New York State Wage Theft Prevention Act ("WTPA").

## JURISDICTION

3.      This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

4.      Venue is proper in this Court under 28 U.S.C. § 1391, because events giving rise to Plaintiffs' claims occurred in Manhattan, which is located within this district.

## THE PARTIES

**Plaintiffs**

5.      Salvador de Jesus Reyes resides in Brooklyn, New York.

6.      Reyes worked for Benchmark as a carpenter and concrete worker from approximately the summer of 2017 through November 2019.

7.      Milwar Vargas resides in the Bronx, New York.

8.      Vargas worked for Benchmark as a carpenter and concrete worker from approximately November 2017 through November 2019.

9.      Eloy Caldas resides in the Bronx, New York.

10.     Caldas worked for Benchmark as a metal bar and concrete worker from approximately May 2017 through September 2018.

**Defendant Benchmark Contracting Inc.**

11.     Defendant Benchmark Contracting Inc. is a New York corporation located at 3924 58th Street, Woodside, New York 11377.

12.     Benchmark also maintains an office at 900 Nepperhan Avenue, Yonkers, New York 10703.

13.     Benchmark is a construction company that conducts carpentry and concrete work for its clients.

14.     Plaintiffs worked on several of Benchmark's construction projects in Manhattan, including at 500 West 25th Street, 73 West 104th Street, 86 Kenmare Street, and 40 Bleecker Street.

15.     Benchmark has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials moved in or produced for interstate commerce by any person.

16.     In each of the three years preceding the filing of this Complaint, Benchmark's annual gross volume of sales exceeded $500,000.

17.     Benchmark is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

**Defendant Alan Raftery**

18.     Defendant Alan Raftery is a principal of Benchmark Contracting Inc. ("Benchmark").

19.     Throughout Plaintiffs' employment, Raftery was at times present at Benchmark's construction worksites to inspect and to direct the work of construction workers.  For example, Raftery would speak with Reyes about the status of construction projects and the work that construction workers needed to perform.

20.     Throughout Plaintiffs' employment, Raftery decided the wage rates of Plaintiffs and other Benchmark construction workers.  For example, Raftery authorized raises for both Vargas and Reyes.

21.     Throughout Plaintiffs' employment, Raftery and Collins chose to pay Plaintiffs and construction workers at a straight time basis, meaning at the same hourly wage rate for all hours worked, including hours worked over forty per workweek.

22.     Throughout Plaintiffs' employment, Raftery would require Plaintiffs and other construction workers to work more hours than scheduled to complete work.  This most frequently happened on days in which the company performed concrete work.

23.     Throughout Plaintiffs' employment, Raftery maintained a record of the number of hours that Benchmark's construction workers worked per workday at each of the company's construction worksites.  The company's foremen at each site would give this information to Raftery.

24.     Raftery had the power and authority to hire and fire construction workers at Benchmark.

25.     Raftery exercised sufficient control over the operations of Benchmark to be considered Plaintiffs' employer under the FLSA and NYLL.

**Defendant Andrew Collins**

26.     Andrew Collins is an owner of Benchmark.

27.     Throughout Plaintiffs' employment, Collins had the power and authority to hire and fire construction workers at Benchmark.

28.     Throughout Plaintiffs' employment, Collins had the power and authority to set the wage rates of construction workers at Benchmark.

29.     Throughout Plaintiffs' employment, Collins had the power and authority to set the work hours of construction workers at Benchmark.

30.     Throughout Plaintiffs' employment, Collins, as Benchmark's owner, decided that the company would store records of the wages paid to and hours worked by construction workers.

31.     Throughout Plaintiffs' employment, Collins, as Benchmark's owner, decided that the company would pay construction workers on an hourly basis.

32.     Throughout Plaintiffs' employment, Collins signed construction contracts on behalf of Benchmark calling for Benchmark to perform construction work using its own construction workers.

33.     Throughout Plaintiffs' employment, Collins worked with Raftery to determine how many construction workers Benchmark needed on specific projects.

34.     Throughout Plaintiffs' employment, Collins and Raftery determined the wage rates to be paid to Benchmark's construction workers.

35.     Throughout Plaintiffs' employment, Collins and Raftery jointly decided to pay Plaintiffs and Benchmark's other construction workers on a straight time basis.

36.     Collins exercised sufficient control over the operations of Benchmark to be considered Plaintiffs' employer under the FLSA and NYLL.

## FACTUAL ALLEGATIONS

37.     Throughout their employment, Plaintiffs and other construction workers mixed concrete, installed metal support bars in buildings, performed carpentry work, poured and set concrete, and performed other construction tasks.

38.     Throughout the last six years, Defendants failed to furnish Plaintiffs and other Benchmark construction workers with weekly wage statements accurately reflecting their overtime wage rates and, at times, the hours worked in the corresponding pay period.

39.     Defendants did not furnish Plaintiffs and other construction workers with a wage notice at the time of hiring or whenever their rates of pay changed.

**Plaintiffs' Hours Worked and Wages Paid**

40.     Throughout their employment, Plaintiffs and other construction workers at Benchmark typically worked six days per workweek.  On average, the workers worked longer shifts two days per workweek, when they performed concrete work.

41.     Throughout their employment, Plaintiffs and other construction workers at Benchmark regularly worked an average of approximately 66 hours per workweek, four days per week from approximately 7:00 a.m. to 5:30 p.m. and two days per week from approximately 7:00 a.m. to a time between 6:00 p.m. and 11:00 p.m., with a thirty-minute lunch break per workday.

42.     On several occasions, Plaintiffs and other construction workers at Benchmark worked more hours per workweek than the average schedule described above.  It was not uncommon for construction workers to work past 5:30 p.m., until approximately 7:00 or 8:00 p.m., on the days before concrete work was to be performed. It was also not uncommon for construction workers to work past 11:00 p.m., on occasion as late as 4:00 a.m., when performing concrete work to ensure the concrete was properly set and dried.

43.     For example, on July 5, 2018, Caldas worked from 7:00 a.m. to 7:00 p.m.

44.     For example, on October 25, 2018, Reyes worked at Benchmark's construction site located at 500 West 25th Street in Manhattan from approximately 7:07 a.m. until 4:05 a.m. the next day.

45.     Defendants paid Reyes $35 per hour, including for hours worked over forty per workweek, for approximately the first year and a half of his employment.

46.     For example, for the workweek of February 19 to 25, 2018, Defendants paid Reyes $35 per hour for 76.75 hours worked, equal to the gross sum of $2,686.25.

47.     For this workweek, Defendants should have paid Reyes $35 per hour for his first 40 hours worked, totaling $1,400, and $52.50 per hour for each of his 36.75 overtime hours worked, totaling $1,929.38, for total gross wages of $3,329.38.

48.     For example, for the workweek of July 2 to July 8, 2018, Defendants paid Reyes $35 per hour for 65 hours worked, equal to the gross sum of $2,275.

6

49.     For this workweek, Defendants should have paid Reyes $35 per hour for his first 40 hours worked, totaling $1,400, and $52.50 per hour for each of his 25 overtime hours worked, totaling $1,312.50, for total gross wages of $2,712.50.

50.     Defendants paid Reyes $38 per hour, including for hours worked over forty per workweek, for approximately the final year of his employment.

51.     Defendants paid Vargas $26 per hour, including for hours worked over forty per workweek, until approximately October 2018.

52.     For example, for the workweek of March 19 to 25, 2018, Defendants paid Vargas $26 per hour for 53 hours worked, equal to the gross sum of $1,378.

53.     For this workweek, Defendants should have paid Vargas $26 per hour for his first 40 hours worked, totaling $1,040, and $39 per hour for each of his 13 overtime hours worked, totaling $507, for total gross wages of $1,547.

54.     Defendants paid Vargas $29 per hour, including for hours worked over forty per workweek, for the remainder of his employment.

55.     For example, for the workweek of January 7 to 13, 2019, Defendants paid Vargas $29 per hour for 58 hours worked, equal to the gross sum of $1,682.

56.     For this workweek, Defendants should have paid Vargas $29 per hour for his first 40 hours worked, totaling $1,160, and $43.50 per hour for each of his 18 overtime hours worked, totaling $783, for total gross wages of $1,943.

57.     Defendants paid Caldas $31 per hour, including for hours worked over forty per workweek, throughout his employment.

58.     For example, for the workweek of July 2 to 8, 2018, Defendants paid Caldas $31 per hour for 65 hours worked, equal to the gross sum of $2,015.

59.     For this workweek, Defendants should have paid Caldas $31 per hour for his first 40 hours worked, totaling $1,240, and $46.50 per hour for each of his 25 overtime hours worked, totaling $1,162.50, for total gross wages of $2,402.50.

60.     For example, for the workweek of August 20 to 26, 2018, Defendants paid Caldas $31 per hour for 47.50 hours worked, equal to the gross sum of $1,472.50.

61.     For this workweek, Defendants should have paid Caldas $31 per hour for his first 40 hours worked, totaling $1,240, and $46.50 per hour for each of his 7.50 overtime hours worked, totaling $348.75, for total gross wages of $1,588.75.

## COLLECTIVE ACTION ALLEGATIONS

62.     Plaintiffs bring this action on behalf of themselves and all similarly situated construction workers who worked at Benchmark within the three years prior to the filing of this Complaint who elect to opt-in to this action (the "FLSA Collective").

63.     The FLSA Collective consists of over fifty construction workers who have been victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime wages.

64.     Throughout Plaintiffs' employment, Plaintiffs and the FLSA Collective have regularly worked more than forty hours on at least some workweeks in the last three years, have performed similar construction work duties, and have been subjected to Defendants' common pay policies depriving them of overtime wages at the rate of one and one-half times their regular hourly wage rates for all hours worked over forty per workweek.

65.     Defendants are aware or should have been aware that the FLSA required them to pay Plaintiffs and the FLSA Collective an overtime premium for hours worked over forty per workweek.

66.     Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiff and the FLSA Collective.

67.     A Benchmark construction worker sued Defendants Benchmark Contracting Inc. and Andrew Collins in January 2019 for the same wage payment violations asserted in this Complaint.  *See Rosado v. Benchmark Contracting Inc.*, No. 19 Civ. 504 (ENV) (JO) (E.D.N.Y.).   Despite litigating and ultimately settling that lawsuit, Defendants continued to pay their construction workers on a straight time basis.

68.     The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  All similarly situated construction workers can be readily identified and located through Defendants' records.  They should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

69.     Plaintiffs bring the claims in this Complaint arising out of the NYLL under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class consisting of all similarly situated construction workers who work or have worked for Benchmark within the six years prior to the filing of this Complaint (the "Rule 23 Class").

70.     The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

71.     The size of the Rule 23 Class exceeds one hundred individuals, although the precise number of such employees is unknown.  Facts supporting the calculation of that number are presently within the sole possession and control of Defendants.

72.     Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

73.     Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually, including the following:

    a.  whether Defendants violated NYLL Article 6, § 190, *et seq.*, and Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142, as alleged herein;

    b.  whether Defendants failed to pay the Rule 23 Class at the correct overtime rate for all time worked in excess of forty hours per week;

    c.  whether Defendants failed to provide the Rule 23 Class with accurate wage statements as required by the NYLL and WTPA;

    d.  whether Defendants failed to provide the Rule 23 Class with wage notices as required by the NYLL and WTPA; and

    e.  the nature and the extent of the class-wide injury and the measure of damages for those injuries.

74.     Plaintiffs' claims are typical of the claims of the Rule 23 Class they seek to represent.  Plaintiffs and the members of the Rule 23 Class work or have worked for Defendants at various times within the applicable six-year statutory period.  They enjoy the same statutory rights under the NYLL to be paid at the overtime rate for all hours worked over forty in a workweek.  Plaintiffs and the Rule 23 Class have sustained similar types of damages because of Defendants' failure to comply with the NYLL.

75.     Plaintiffs and the Rule 23 Class have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

76.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

77.     Plaintiffs have retained legal counsel competent and experienced in wage-and-hour litigation and class action litigation.

78.     There is no conflict between Plaintiffs and the Rule 23 Class members.

79.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the Rule 23 Class have been damaged and are entitled to recovery because of Defendants' common policies, practices, and procedures.  Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  Individual plaintiffs lack the financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

80.     This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

### FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

81.     Plaintiffs incorporate all previous paragraphs by reference.

82.     Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages at the rate of one and one-half (1½) times their regular hourly wage rates per hour worked over forty per workweek.

83.     Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiffs and the FLSA Collective.

84.     Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs' and the FLSA Collective's compensation.

85.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

86.     Due to Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

### SECOND CLAIM
### (New York Labor Law – Unpaid Overtime)

87.     Plaintiffs incorporate all previous paragraphs by reference.

88.     Pursuant to the NYLL and supporting New York State Department of Labor ("NYDOL") Regulations, Defendants were required to pay Plaintiffs and the Rule 23 Class one and one-half (1½) times their regular hourly rates of pay for all hours worked over forty per workweek.

89.     Defendants are employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting NYDOL Regulations, and employed Plaintiffs and the Rule 23 Class.

90.     Defendants failed to pay Plaintiffs and the Rule 23 Class overtime wages equal to one and one-half (1½) times their regular hourly rates of pay per hour worked over forty per workweek.

91.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 Class overtime wages.

92.     Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

**THIRD CLAIM**
**(New York Labor Law – Failure to Provide Accurate Wage Statements)**

93.     Plaintiffs incorporate all previous paragraphs by reference.

94.     The NYLL and WTPA require employers to provide employees with an accurate wage statement each time they are paid.

95.     Defendants failed to furnish Plaintiffs and the Rule 23 Class, with each wage payment, with a statement accurately reflecting their: rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

96.     Due to Defendants' violation of the NYLL, § 195(3), Plaintiffs and the Rule 23 Class are entitled to recover from Defendants liquidated damages of $250 per workday, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1–d).

**FOURTH CLAIM**
**(New York Labor Law – Failure to Provide Accurate Wage Notices)**

97.     Plaintiffs incorporate all previous paragraphs by reference.

98.     The NYLL and WTPA require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

99.     Defendants failed to furnish Plaintiffs and the Rule 23 Class at the time of hiring, and whenever there was a change to their rates of pay, with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; their overtime wage rates; allowances, if any,

claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

100.    Due to Defendants' violation of NYLL § 195(1), Plaintiffs and the Rule 23 Class are entitled to recover from Defendants liquidated damages of $50.00 per day that the violation occurred, up to a maximum of $5,000.00, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1–b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Rule 23 Class, respectfully request that this Court:

a.    certify this case as a class action pursuant to Rule 23 for the class of employees described herein, certification of Plaintiffs as the class representatives, and designation of Plaintiffs' counsel as Class Counsel;

b.    designate this action as a collective action on behalf of the FLSA Collective and authorize the prompt issuance a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

c.    declare that Defendants have violated the overtime wage provisions of the FLSA and the NYLL;

d.    declare that Defendants violated the notice and record keeping provisions of the NYLL and WTPA;

e.     declare that Defendants' violations of the FLSA and NYLL were willful;

f.     award Plaintiffs, the FLSA Collective, and the Rule 23 Class unpaid overtime wages;

g.     award Plaintiffs and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish them with wage notices upon hiring and accurate wage statements at the end of each pay period, in violation of the NYLL and WTPA;

h.     award Plaintiffs, the FLSA Collective, and the Rule 23 Class liquidated damages pursuant to the FLSA and the NYLL;

i.     award Plaintiffs and the Rule 23 Class pre- and post-judgment interest under the NYLL;

j.     awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class reasonable attorneys' fees and costs of the action pursuant to the FLSA and the NYLL; and

k.     award such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated: New York, New York
        August 27, 2021

PECHMAN LAW GROUP PLLC


By:  s/Louis Pechman
     Louis Pechman
     Gianfranco J. Cuadra
     Pechman Law Group PLLC
     488 Madison Avenue, 17th Floor
     New York, New York 10022

15

Tel.: (212) 583-9500
pechman@pechmanlaw.com
cuadra@pechmanlaw.com

*Attorneys for Plaintiffs, the Putative FLSA
Collective, and Putative Rule 23 Class*